UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PATRICIA C.,<br><br>                    Plaintiff,<br><br>      v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | NO:  4:18-CV-5024-TOR<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary

judgment. ECF Nos. 13, 14. Chad Hatfield represents Plaintiff. Joseph J.

Langkamer represents Defendant. The Court has reviewed the administrative

record and the parties' completed briefing, and is fully informed. For the reasons

discussed below, the Court grants Defendant's motion and denies Plaintiff's

motion.

//

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *See*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work, and (2) such work "exists in significant numbers

in the national economy." 20 C.F.R. §§ 404.1560(c); 416.960(c)(2); *see Tackett*,

180 F.3d at 1098-99.

### ALJ'S FINDINGS

Plaintiff protectively filed an application for supplemental security income

disability benefits on January 13, 2014, alleging disability beginning January 13,

2014.[1] Tr. 18, 275-83. The application was denied initially and upon

reconsideration, and a hearing was requested. Tr. 178-92, 194-210. A video

hearing was held before an Administrative Law Judge on February 9, 2017. Tr.

114-51. The ALJ rendered a decision denying Plaintiff benefits on March 27,

2017. Tr. 15-33.

The ALJ initially noted that Plaintiff previously applied for supplemental

security income on September 15, 2011, alleging disability beginning December 1,

---

[1]     As discussed below, Plaintiff originally alleged an onset date of December 2,

2005. Tr. 18. At the appeal hearing, however, Plaintiff's counsel amended the

alleged onset date to January 13, 2014, the protective filing date. Tr. 117.

2005.  Tr. 18; 155.  On March 22, 2013, Plaintiff was found not to be disabled.  Tr. 152-54; 155-71.  Because Plaintiff did not appeal the prior decision, the ALJ concluded that the March 22, 2013, decision was administratively final and the doctrine of res judicata applied.  Tr. 18.  The ALJ then turned to the issue of the *Chavez*[2] presumption of continuing non-disability.  *Id*.  Based on medical evidence submitted since the prior decision, the ALJ concluded that the presumption of non-disability had not been rebutted because Plaintiff's "mental and physical functioning has not substantially deteriorated since March 22, 2013."  *Id*.  The ALJ observed that although Plaintiff alleged an onset date of December 2, 2005, in her current SSI application, the period between December 2, 2005, and March 22, 2013, had already been adjudicated.  *Id*.  However, the ALJ also acknowledged that Plaintiff's counsel amended the alleged onset date to January 13, 2014, removing Plaintiff's current application for benefits from the period adjudicated by the prior decision.  *Id*.  The ALJ then proceeded to the five-step analysis.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 13, 2014, the alleged onset date.  Tr. 20.  At step two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia; mild bilateral carpal tunnel syndrome residuals from carpal tunnel

---

[2]     *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).

releases; degenerative changes in the left knee residuals from arthroscopic surgery; residuals from left ankle fracture; learning disorder; depression; anxiety; and history of substance abuse. *Id*. At step three, the ALJ found that Plaintiff's severe impairments did not meet or medically equal a listed impairment. Tr. 21-23. The ALJ then determined that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 416.967(a) except the follow[ing]. She can lift/carry 20 pounds occasionally and 10 pounds frequently. She can stand/walk (with normal breaks) 4 hours in an 8-hour workday. She can sit (with normal breaks) 6 hours in an 8-hour workday. She can push/pull unlimitedly within those exertional limitations. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl throughout the court of a workday. She can never climb ladders, ropes, or scaffolds. She can reach all directions, including overhead, without limitations. She can frequently handle bilaterally. She can unlimitedly finger and feel bilaterally. She is to avoid concentrated exposure to workplace hazards, such as machinery and unprotected heights. She is able to understand, remember, and carry out simple instructions and can make judgments commensurate with the functions of unskilled work (i.e., work that needs little or no judgment to do simple duties and a person can usually learn to do the job in 30 days, and little specific vocational preparation or judgment are needed). She can respond appropriately to supervision, coworkers, and deal with occasional changes to the work environment. She has some difficulty working directly with the general public but can work in jobs requiring only occasional interaction with the general public.

Tr. 23-24. At step four, the ALJ found that Plaintiff had no relevant past work experience. Tr. 32. At step five, after considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that Plaintiff was

capable of performing in representative occupations, such as a production

assembler, inspector and hand packager, and nut and bolt assembler, which exist in

significant numbers in the national economy.  Tr. 32-33.  On that basis, the ALJ

concluded that Plaintiff was not disabled as defined in the Social Security Act.  Tr.

33.

The Appeals Council denied Plaintiff's request for review on December 13,

2017, making the ALJ's decision the Commissioner's final decision for purposes

of judicial review.  Tr. 1-3; 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§

416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her supplemental security income disability benefits under Title XVI of the Social

Security Act.  Plaintiff raises six issues for review:

(1) Whether the ALJ properly concluded that Plaintiff failed to rebut
the *Chavez* presumption;

(2) Whether the ALJ properly evaluated Plaintiff's alleged
impairments at step-two;

(3) Whether the ALJ properly weighed the medical opinions of
Plaintiff's medical providers;

(4) Whether the ALJ properly evaluated Plaintiff's subjective
complaints;

(5) Whether the ALJ properly evaluated lay witness testimony;

(6) Whether the ALJ properly evaluated Plaintiff's capability to perform work in the national economy at step-five.

ECF No. 13 at 5-6.  The Court evaluates each issue in turn.

## DISCUSSION

### A. The *Chavez* Presumption of Continuing Non-Disability

Plaintiff contends that the ALJ erred in concluding that she failed to rebut the *Chavez* presumption of continuing non-disability.  ECF Nos. 13 at 8; 15 at 1-2.  According to Plaintiff, the ALJ was required to reanalyze the prior findings based on the new medical evidence of record, new opinion evidence, and new lay witness testimony, as well as Plaintiff's changed age.  ECF No. 15 at 2.  In response, Defendant argues that the ALJ did in fact independently analyze Plaintiff's current disability claim, considering the evidence submitted since the date of the last decision and making different findings from the prior decision.  ECF No. 14 at 5.  In other words, Defendant asserts that "the ALJ already engaged in the analysis that Plaintiff asks for."  *Id.* at 4.

Principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings.  *Chavez*, 844 F.2d at 693.  Under the doctrine, a prior, final determination of nondisability has two results: (1) it bars reconsideration of a period already adjudicated under a final administration decision, and (2) it creates a

presumption of continued non-disability for the period subsequent to a final administrative decision, i.e., the "*Chavez* presumption." *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995). The practical consequence of the *Chavez* presumption of continuing non-disability is a change in the burden of proof in subsequent applications. In the usual case, once a claimant shows he or she cannot perform his or her past relevant work, the burden shifts to the Commissioner at step-five of the sequential evaluation to demonstrate the claimant can perform other jobs in the national economy. *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1379 (9th Cir. 1984). The presumption of continuing non-disability means the claimant retains the burden at step-five. *Id.*

Of course, the presumption of continuing non-disability is rebuttable. To overcome the presumption, a claimant "must prove 'changed circumstances' indicating a greater disability." *Chavez*, 844 F.2d at 698; Acquiescence Ruling (AR) 97-4(9); *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985). In other words, the claimant must show both "changed circumstances" and "greater disability." *Chavez*, 844 F.2d at 698. Examples of changed circumstances include "[a]n increase in the severity of claimant's impairment," "a change in the claimant's age category," or a new issue raised by the claimant, "such as the existence of an impairment not considered in the previous application." *Lester*, 81 F.3d at 827-28 (citations omitted); AR 97-4(9).

Here, the ALJ determined that he was required to address the *Chavez* issue "[b]ecause this is a case in which there has been a prior unfavorable [ALJ] decision." Tr. 18. Based on the medical evidence submitted after the prior decision, the ALJ concluded that the presumption of continuing non-disability had not been rebutted because Plaintiff's "mental and physical functioning has not substantially deteriorated since March 22, 2013." *Id.* As discussed, the ALJ noted that Plaintiff initially alleged an onset date of December 2, 2005, the prior ALJ had already adjudicated from the alleged onset date through March 22, 2013, and Plaintiff's counsel subsequently amended the alleged onset date to January 13, 2014, matching the filing date of Plaintiff's current SSI application. *Id.* As such, the ALJ clarified that "[a]ny reference to evidence that relates to the period adjudicated by the prior decision is for the sole purpose of providing a context to [Plaintiff's] current application for benefits." *Id.* Next, rather than applying the presumption of non-disability to Plaintiff's current application, the ALJ proceeded to the five-step sequential analysis.

Plaintiff maintains that the ALJ erred in his *Chavez* determination because Plaintiff demonstrated changed circumstances in two ways: (1) she offered new and material medical evidence, which established that her impairments had increased in severity since the date of the prior ALJ's decision; and (2) since the date of the prior decision, Plaintiff changed age categories from a younger

individual age 18-44 to a younger individual age 45-49. ECF No. 13 at 8. Defendant argues that, although the ALJ stated that Plaintiff failed to rebut the *Chavez* presumption, the ALJ actually analyzed the case independently from the presumption of non-disability. ECF No. 14 at 5.

In concluding that Plaintiff failed to rebut the *Chavez* presumption, the ALJ confirmed that his decision was "[b]ased on my review of the medical evidence submitted since the prior decision." Tr. 18. This finding must be affirmed if supported by substantial evidence. *Booz*, 734 F.2d at 1380. The ALJ did not, however, elaborate further on what specific evidence was actually considered in reaching his decision. The ALJ did not point to any specific records demonstrating that Plaintiff failed to show any greater disability as of January 13, 2014, than she had shown in the March 2013 hearing. Based on the ALJ's brief *Chavez* analysis, it is not entirely clear whether the ALJ's decision is supported by substantial evidence.

That said, Plaintiff's argument that "updated medical evidence of record, updated medical opinions, and lay witness statements," as well as Plaintiff's changed age, constitutes "significant changes in circumstances" is not entirely convincing. Plaintiff does not identify which specific records, medical opinions, or lay witness statements "constitute new and material evidence and a changed condition." ECF No. 13 at 8. Moreover, though Plaintiff changed age categories

from a younger individual age 18-44 to a younger individual age 45-49, this particular change in age status is not outcome-determinative under the Medical-Vocational grids.[3]  *Chavez*, 844 F.2d at 694.  In short, Plaintiff has not convinced the Court of "changed circumstances" precluding the application of res judicata to the prior ALJ's finding of disability.  ECF No. 13 at 8; *Chavez*, 844 F.2d at 693.

At any rate, any potential error resulting from the ALJ's res judicata determination is harmless in this case because the ALJ made an alternative finding addressing Plaintiff's eligibility from January 13, 2014, the amended alleged onset date.  Tr. 20-33; *see Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").  As Defendant points out, rather than applying res judicata to the period subsequent to the prior ALJ ruling, the ALJ proceeded with a review of the medical evidence submitted since the prior decision, formulated a RFC based on the evidence in the record, and

---

[3]  Under the Medical-Vocational grids, there is no distinction between younger individuals age 18-44 and younger individuals age 45-49 for those with a RFC to perform light work, like Plaintiff here.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986).  The distinction only applies in limited circumstances to individuals with a maximum sustained work capability limited to sedentary work.  *Id*.

concluded Plaintiff was not disabled at step-five of the sequential process. Tr. 20-33. Significantly, the ALJ carried the burden at step-five to demonstrate that Plaintiff could perform other jobs in the national economy. *Id*. at 32-33. In other words, the ALJ did not apply a presumption that Plaintiff continued to be able to do light work, based on the prior administrative ruling. Thus, Plaintiff fails to identify how the presumption of continuing non-disability is implicated in the ALJ's assessment of the evidence. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only the error, but also that if affected his 'substantial rights,' which is to say, not merely his procedural rights.") (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009)). Because Plaintiff cannot demonstrate that the alleged error in application of the *Chavez* presumption prejudiced her, any error in the ALJ's *Chavez* analysis is harmless.

### B. Step Two Analysis

Plaintiff asserts that the ALJ erred by (1) improperly discounting the severity of Plaintiff's carpal tunnel syndrome ("CTS"), and (2) failing to conclude at step two that she had the following significant impairments: degenerative arthritis, causing pain with movement, weakness, and limited mobility; cervical neck, thoracic and lumbosacral back pain with sciatica pain; insomnia; and, chronic headaches/migraines. ECF No. 13 at 13-14. Defendant contends that the ALJ

properly evaluated the severity of these impairments and that Plaintiff has failed to show that the ALJ erred at step-two. ECF No. 14 at 5-7.

At step two, a claimant bears the burden of demonstrating that she has medically determinable physical impairments which (1) have lasted or are expected to last for a continuous twelve-month period and (2) significantly limit her ability to do basic work activities. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c), 416.909. An impairment does not limit an ability to do basic work activities where it "would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).

Here, the ALJ concluded that Plaintiff suffered from the following severe impairments: fibromyalgia; mild bilateral carpal tunnel syndrome residuals from carpal tunnel releases; degenerative changes in the left knee residuals from arthroscopic surgery; residuals from left ankle fracture; learning disorder; depression; anxiety (panic disorder vs. posttraumatic stress disorder (PTSD)); and, a history of substance abuse. Tr. 20. Regarding Plaintiff's allegations of additional impairments, the ALJ explained:

> The record mentions other impairments from time to time, including osteoporosis and hernia. However, those impairments did not cause significant limitations in functioning, or did not last for a continuous period of 12 months after the amended alleged onset date. As such, they are non-severe. However, any non-severe impairment has been taken into account in assessing claimant's residual functional capacity.

Tr. 21.

Importantly, a step two finding of severe impairment does not itself result in a finding of disability. The step-two analysis merely screens out groundless claims. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Having passed through the step-two window, Plaintiff cannot show she was harmed by the Commissioner's step-two finding. While styled as a step-two challenge, Plaintiff's arguments are better directed towards the ALJ's RFC findings as applied at steps four and five. Only then could Plaintiff show the necessary harmful error. *See Lewis v. Astrue*, 498 F.3d 909. 911 (9th Cir. 2007) (holding that ALJ's failure to list plaintiff's bursitis as a severe impairment at step two was harmless where ALJ considered limitations caused by the condition at step four).

Plaintiff alleges that the ALJ "improperly discounted the severity of [Plaintiff's] carpal tunnel syndrome," and ignored substantial and undisputed evidence of Plaintiff's *other* impairments, therefore failing to consider how these impairments, alone or in combination, affected Plaintiff's ability to perform basic work activities. ECF No. 10 at 13. Beginning with Plaintiff's first argument, the record establishes that the ALJ initially recognized Plaintiff's CTS as a severe impairment at step-two. Tr. 20 (listing "mild bilateral carpal tunnel syndrome residuals from carpal tunnel releases" as one of eight severe impairments). The ALJ did not "discount[] the severity" of Plaintiff's CTS at step-two. Rather, the

1  ALJ consider the severity of Plaintiff's CTS in formulating Plaintiff's RFC at step-

2  four.  Tr. 25-26.

3          At step-four, addressing Plaintiff's allegation of significant bilateral CTS

4  pain, the ALJ concluded that Plaintiff's statements concerning the intensity of her

5  CTS pain was not entirely consistent with the medical evidence of record.  *Id*.  The

6  ALJ observed that Plaintiff underwent bilateral CTS releases prior to the alleged

7  onset date, and Plaintiff displayed decreased grip strength in both hands during Dr.

8  James Opara's June 2014 examination—4/5 on the right and 3/5 on the left.  Tr.

9  25.  However, the ALJ also noted Dr. Opara's conflicting medical opinion, which

10  described Plaintiff as retaining the ability to "lift/carry 20 pounds occasionally and

11  10 pounds frequently."  Tr. 29; 426.  Even though Plaintiff's "[h]andling would be

12  limited due to her carpal tunnel syndrome associated with the weakness of grip,"

13  Plaintiff was able to finger and feel with no limitation, and Dr. Opara described

14  Plaintiff's CTS prognosis as "fair."  Tr. 436.  The ALJ also cited Dr. Olegario

15  Ignacio's 2015 evaluation, which confirmed Plaintiff had decreased grip strength

16  resulting from CTS, but opined that Plaintiff was able to frequently handle with

17  both hands.  Tr. 29; 205-09.  From these records, the ALJ concluded that, while the

18  evidence did indicate that Plaintiff has some impairment resulting from her CTS,

19  Plaintiff was nevertheless capable of performing light work.  The ALJ factored the

20

alleged limitations into his RFC evaluation. The Court concludes that the ALJ's

findings are supported by substantial evidence.

Turning to Plaintiff's second argument, the ALJ thoroughly considered each

of the asserted limitations—"degenerative arthritis, causing pain with movement,

weakness, and limited mobility; cervical neck, thoracic and lumbosacral back pain

with sciatica pain; insomnia; and chronic headaches/migraines"—in formulating

Plaintiff's RFC. ECF No. 13 at 14. The ALJ noted that Plaintiff complained of

left knee degenerative and arthritis pain, Plaintiff had a history of arthritis, and

Plaintiff was previously diagnosed with tendonitis of the left knee and the left

ankle. Tr. 25; 435-36. However, the ALJ also observed that, as of May 2016,

Plaintiff was doing well on current medications, with decreased back and joint

pain. Tr. 26; *see* Tr. 524. In November 2016, Plaintiff again reported decreased

joint and back pain. Tr. 518. The ALJ also cited several sections of the record

which indicate that Plaintiff retains normal/near normal range of motion in her

upper and lower extremities, normal neck with full range of motion and no

tenderness, and normal back with no costoverterbral angle (CVA) tenderness. Tr.

435; 513-514; 517; 519; 521; 523. From these records and Plaintiff's

demonstrated ability to handle day-to-day activities, the ALJ concluded that, while

the evidence does indicate Plaintiff has some impairment to her back, neck, knees,

ankles, and hands, Plaintiff is nevertheless capable of performing light work.

Again, the Court concludes that the ALJ's findings are supported by substantial evidence.

Finally, the ALJ also observed that Plaintiff complained of migraine headaches and sleep disturbance. Tr. 25. The ALJ observed that while Plaintiff continued to have headaches after the amended alleged onset date of January 13, 2014, Dr. Opara's June 2014 evaluation determined that the prognosis of Plaintiff's migraine headaches was good and Plaintiff showed no neurological deficits, and Plaintiff's 2016 treatment notes contained no complaint of headaches. Tr. 26; *see id*. at 433-36; 452-55; 514. Based on this record, the ALJ concluded that Plaintiff was limited by migraines and headaches, but not as severely as she alleged. Tr. 26. The ALJ's findings are supported by substantial evidence.

The Court acknowledges that perhaps it would be better practice for the ALJ to discuss Plaintiff's alleged additional limitations in greater detail at step-two. However, the ALJ factored the alleged limitations into his RFC evaluation at step-four, and the ALJ's findings are supported by substantial evidence. For this reason, any failure to specifically discuss the asserted limitations at step-two is harmless.

**C. Opinions of Medical Providers**

Next, Plaintiff faults the ALJ for improperly rejecting the opinions of two examining physicians—Dr. Opara and Dr. N.K. Marks—and Plaintiff's treating

physician assistant—Javier Huerta, P.A. ECF Nos. 10 at 8-12; 15 at 1-4. The ALJ, however, did not reject Dr. Opara's, Dr. Mark's, and P.A. Huerta's opinions entirely, but instead gave each "little weight" relative to other evidence in the record. Tr. 29-31.

In analyzing an ALJ's weighing of medical evidence, a reviewing court distinguishes between the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, the opinion of a treating physician carries more weight than the opinion of an examining physician, and the opinion of an examining physician carries more weight than the opinion of a reviewing physician. *Id.* In addition, the Commissioner's regulations give more weight to opinions that are explained than to opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists. *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. Regardless of the source, an ALJ need not accept a physician's opinion that is "brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13. That said, the ALJ is not required to recite any magic words to properly reject a medical opinion. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (stating that the Court may draw reasonable inferences when appropriate). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

### 1. Dr. James Opara

On June 28, 2014, Dr. Opara performed a physical examination of Plaintiff. Tr. 433-36. Dr. Opara determined that Plaintiff could stand or walk for 4 hours, lift 20 pounds occasionally and 10 pounds frequently, sit without limitation, climb occasionally, balance without limitation, and stoop, kneel, crouch, and crawl occasionally. Tr. 436. Dr. Opera also concluded that Plaintiff could reach without limitation, finger and feel without limitation, but "[h]andling would be limited due to [Plaintiff's] carpal tunnel syndrome associated with the weakness of grip." *Id*.

The ALJ assigned significant weight to Dr. Opara's June 2014 opinion that Plaintiff could "lift/carry 20 pounds occasionally and 10 pounds frequently," "stand/walk a maximum of 4 hours in an 8-hour workday," "reach all directions, including overhead, without limitations," "frequently handle bilaterally due to CTS and associated weakness grip," "unlimitedly finger and feel bilaterally," and "avoid working at heights." Tr. 29. As the ALJ explained, he gave significant weight to this portion of Dr. Opara's opinion "because it is consistent with the substantial findings and the record evidence as a whole including the claimant's presentation during examinations." *Id*.

The ALJ gave less weight, however, "to Dr. Opara's opinion that the claimant does not have any limitation in her ability to sit or balance and that she could occasionally climb ladders, ropes, or scaffolds (citation omitted) because this

portion of his opinion is not consistent with his own observation of the claimant during the physical examination." *Id*. To accommodate Plaintiff's decreased range of motion of the lumbar spine, as well as her issues with her left knee and ankle, the ALJ limited Plaintiff "to sit (with normal breaks) for 6 hours in an 8-hour workday" and "to occasional balance and never to climb ladders, ropes, or scaffolds, and to avoid concentrated exposure to machinery." *Id*.

Plaintiff claims the ALJ erred by "(1) overlooking the severity of the claimant's carpal tunnel syndrome established by Dr. Opara; and (2) failing to limit [Plaintiff] to occasional handling." ECF No. 13 at 9-10. However, Dr. Opara stated that "handling would be limited" due to Plaintiff's CTS, not that handling would be occasional, and he projected that Plaintiff's CTS prognosis was fair. Tr. 436. Although recognizing that Plaintiff experienced weakness of grip in both hands, "which makes it hard for her to lift or carry heavy objects," Dr. Opara concluded that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, and frequently handle bilaterally. *Id*. Based on this record, the Court concludes that the ALJ reasonably interpreted Dr. Opara's findings and restricted Plaintiff to "frequent handling," rather than "occasional handling," and, therefore, the Court does not find error. *Id*.

//

//

### 2. Dr. N.K. Mark

On December 12, 2013, Dr. Mark performed a psychological/psychiatric evaluation of Plaintiff for the DSHS Aged, Blind, or Disabled (ABD) program.  Tr. 467-71.  Dr. Mark observed that Plaintiff suffered from generalized anxiety disorder, depression, and poor auditory comprehension.  Tr. 468.  Discussing the generalized anxiety disorder, Dr. Mark concluded that "[b]ased on collateral information and this patient's self report as well as her tendency to continue to find things to worry about, she is likely to [be] experiencing at least a moderate to severe level of anxiety," which "would likely interfere with her ability to focus on a job, learn new tasks."  *Id*.  Regarding Plaintiff's depression, Dr. Mark determined that Plaintiff experienced a moderate level of depression, which would "moderately interfere with her ability to focus and remain on task at a job." Turning to Plaintiff's poor auditory comprehension, Dr. Marks stated that Plaintiff's need to have things repeated multiple times, even after hearing directions repeated and repeating them out loud to herself, "could severely affect [Plaintiff's] performance on any job and further assessment is recommended."  *Id*.

On January 23, 2015, Dr. Mark examined Plaintiff for a second time.  Tr. 445-49.  Based on Plaintiff's self-report and her responses on questionnaires, Dr. Mark again diagnosed Plaintiff with generalized anxiety order, moderate and recurrent major depressive disorder, resolving PTSD, and specific learning

disorder with impairments in reading and auditory comprehension.  Tr. 449.  Dr.

Mark determined that Plaintiff's "anxiety symptoms might interfere with her

performance on a job due to excessive worry, nervousness, inability to sleep, poor

focus on concentration," and that Plaintiff "may need modifications to

accommodate her learning disabilities such as needing additional explanations,

extra time to complete tasks, having information read to her."  *Id.*  Dr. Mark stated

that Plaintiff "likely has a mild learning disability in auditory comprehension,"

meaning "[s]he might need to have things repeated multiple times."  *Id*.

The ALJ assigned little weight to Dr. Mark's December 2013 opinion that

Plaintiff "has marked limitations in some of her social and cognitive functioning."

Tr. 30.  The ALJ provided several reasons for discounting Dr. Mark's December

2013 opinion, including the following: (1) Dr. Mark relied heavily on Plaintiff's

subjective complaints in formulating the December 2013 opinion; (2) the

December 2013 opinion was formed prior to the amended alleged onset date; and

(3) the December 2013 opinion was inconsistent with Dr. Mark's observations of

Plaintiff during the January 2015 examination when Plaintiff appeared "well

groomed, oriented, friendly, cooperative, and engaged with normal speech, no

psychomotor agitation, and only some limitations in memory and concentration."

Tr. 30-31.

Regarding the January 2015 examination, the ALJ gave "some weight" to Dr. Mark's opinion that Plaintiff's "anxiety symptoms might interfere with her performance on a job due to excessive worry, nervousness, and inability to sleep, poor focus and concentration." Tr. 31. As the ALJ explained, it was appropriate to give "some weight" to Dr. Mark's January 2015 opinion because it was consistent with the longitude of the record, including Dr. Mark's own descriptions of Plaintiff during the 2015 examination. *Id*. In light of Dr. Mark's January 2015 opinion, the ALJ determined that Plaintiff "may need modifications to accommodate her learning disabilities such as needing additional explanations, extra time to complete tasks" and "having information read to her." *Id*.

Plaintiff first argues that the ALJ "rejected" Dr. Mark's December 2013 opinion for one reason: Dr. Mark largely relied on Plaintiff's subjective self-reports. ECF No. 13 at 11. Plaintiff contends that the ALJ did not—and was required to—explain how he reached his conclusion in that regard. *Id*. However, the Court finds that the ALJ did explain how he arrived at his decision to give the December 2013 opinion "little weight." Tr. 30.

First, the ALJ explained that Dr. Mark's "appears to rely quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." *Id*. The ALJ provided two examples of this reliance from Dr. Mark's

analysis of Plaintiff's generalized anxiety order:  (1) "Dr. Mark noted that his/her opinion about the level of the claimant's anxiety is based on 'collateral information and this patient's self-report and her tendency to continue to find things to worry about," and (2) "[Dr. Mark] opined that claimant's moderate limitations in her ability to focus and remain at a job is also based on the claimant's self-report of past violent relationships and homelessness."  *Id*.  Explaining his reasons for questioning the reliability of Plaintiff's subjective complaints, the ALJ noted and gave significant weight to the December 2013 opinion of Daniel M. Neims, Psy.D., that Plaintiff's "inconsistency in report of sobriety and most recent psychological evaluation in addition to historical diagnosis of antisocial characterological traits raises questions regarding validity of the claimant's self-report symptoms."  *Id*. at 30-31; *see also id*. at 509-10.  Based on the record, the Court finds that the ALJ did not merely assume that Dr. Mark's opinion was based on Plaintiff's self-report.  Instead, the ALJ adequately explained how he reached this conclusion.

Moreover, contrary to Plaintiff's contentions, the ALJ provided two other reasons for assigning "little weight" to Dr. Mark's December 2013 opinion, in addition to Dr. Mark's reliance on Plaintiff's subjective reporting.  First, the ALJ stated that, in determining Plaintiff's RFC after the amended alleged onset date, "I give little weight to opinions formed prior to the amended alleged onset date," which includes Dr. Mark's December 2013 opinion.  Tr. 31.  Second, the ALJ

1  observed that "Dr. Mark's opinions are inconsistent with his/her observation of the

2  claimant during a mental status examination completed in January 2015 when the

3  claimant was well groomed, oriented, friendly, cooperative, and engaged with

4  normal speech, no psychomotor agitation, and only some limitations in memory

5  and concentration." *Id*. As a result, the ALJ limited the weight of Dr. Mark's

6  December 2013 opinion because the December 2013 opinion both predated the

7  alleged onset date and was inconsistent with Dr. Mark's January 2015 mental

8  status examination results. Accordingly, the Court concludes that the ALJ

9  provided germane reasons for giving little weight to Dr. Mark's December 2013

10  opinion and, therefore, the Court does not find error.

11    Plaintiff next argues that the ALJ committed clear legal error by arbitrarily

12  failing to include the restrictions identified in Dr. Mark's January 2015 opinion in

13  Plaintiff's RFC. ECF No. 13 at 11-12. Specifically, Plaintiff alleges that the ALJ

14  claimed to adopt specific restrictions from Dr. Mark's opinion, including

15  Plaintiff's "need for additional explanations, extra time to complete tasks, and

16  having information read to her," which the Vocational Expert testified would

17  preclude competitive employment. *Id*.

18    In assigning "some weight" to Dr. Mark's January 2015 opinion, the ALJ

19  accepted Dr. Mark's recommendation that Plaintiff "may need modifications to

20  accommodate her learning disabilities such as needing additional explanation,

extra time to complete tasks, having information read to her." Tr. 31; *see id*. at

449. Plaintiff faults the ALJ for failing to incorporate these specific findings into

the RFC. However, as made clear in the January 2015 opinion, Dr. Mark offered

the proposed modifications as a recommendation, not an imperative. An ALJ may

rationally rely on specific imperatives regarding a claimant's limitations, rather

than recommendations. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155,

1165 (9th Cir. 2008). In addition, an ALJ is not required to repeat verbatim a

doctor's recommendations in a claimant's RFC; instead, the ALJ is "responsible

for translating and incorporating clinical findings into a succinct RFC." *Rounds v.*

*Comm'r Soc. Sec. Admin*., 807 F.3d 996, 1006 (9th Cir. 2015).

Here, the ALJ reasonably accounted for Dr. Mark's recommendations in the

RFC by limiting Plaintiff to unskilled work, "i.e., work that needs little or no

judgment to do simple duties and a person can usually learn to do the job in 30

days, and little specific vocational preparation or judgment are needed." Tr. 23-24.

The Court finds that the ALJ's RFC determination adequately incorporated the

opinion of Dr. Mark and, therefore, rejects this argument.

### 3. Javier Huerta, P.A.

Finally, Plaintiff argues that the ALJ "improperly rejected" the December

2013, March 2015, and October 2015 opinions of Javier Huerta, P.A., a physician

assistant who has treated Plaintiff for ten years. ECF No. 13 at 12-13. The ALJ

did not "reject" P.A. Huerta's opinions, but rather assigned them "little weight." Tr. 30. In the disputed opinions, P.A. Huerta described Plaintiff as being "completely disabled and unable to participate in gainful employment," and unable to meet the demands of sedentary work. Tr. 451; 459-61; 463-65. P.A. Huerta's opinions are inconsistent with the opinions of Dr. Ignacio and Dr. Opara, both of whom found Plaintiff capable of performing light work. Tr. 203-06; 436. As a contradicted opinion, the Court must determine whether the ALJ provided specific and legitimate reasons supported by substantial evidence in assigning the opinion little weight.

The ALJ provided several reasons for discounting P.A. Huerta's opinions, including the following: (1) P.A. Huerta's opinions were not supported by the substantial findings and the record evidence as a whole, including Plaintiff's presentation during examinations and Plaintiff's activities of daily living; (2) P.A. Huerta's October 2015 opinion lacked adequate "explanation on how [Plaintiff's] arthritis has resulted in marked and severe limitations in the claimant's ability to walk, lift, carry, handle, push, pull, reach, stoop, and crouch," and; (3) regarding P.A. Huerta's December 2013 opinion that Plaintiff is "completely disabled and unable to participate in gainful employment," a physician assistant is not considered an "acceptable medical source" within the regulatory definition and, more importantly, the ultimate question of disability is reserved to the

commissioner.  Tr. 30.  Plaintiff contends that the ALJ erred in discounting P.A.

Huerta's opinions by (1) "failing to consider [Social Security Ruling] 06-03p in his

evaluation and rejection"; and (2) "failing to offer specific, germane reasons for the

rejection."  ECF No. 13 at 13.  The Court considers each argument in turn.

Pursuant to SSR 06-03p, an ALJ may consider evidence from "other

sources" to show the severity of the claimant's impairments and how it affects the

individual's ability to function.  SSR 06-03p, *available at* 2006 WL2329939, at *2.

"Other sources" include "[m]edical sources who are not 'acceptable medical

sources,' such as . . . physician assistants."  *Id*.  Notably, while information from

"other sources" may be used to provide insight into impairment severity and

functional effects, only "acceptable medical sources" can establish the existence of

a medically determinable impairment, provide medical opinions, and be considered

treating sources whose medical opinions may be entitled to controlling weight.  *Id*.

at *1.  In addition, "final responsibility for deciding certain issues, such as whether

an individual is disabled under the Act, is reserved to the Commissioner."  *Id*. at

*3.

Here, the ALJ did not generally disregard P.A. Huerta's opinions because he

was not an "acceptable medical source," as Plaintiff suggests.  ECF No. 13 at 12-

13.  Instead, the ALJ only decided to give "little weight" to one particular opinion

on that basis—specifically, P.A. Huerta's opinion that Plaintiff was "completely

disabled and unable to participate in gainful employment." Tr. at 30. Explaining

his reasoning for assigning this opinion "little weight," the ALJ explained that a

physician assistant is not considered an "acceptable medical source" and, "[m]ore

significantly, the ultimate question of disability is reserved to the commissioner."

*Id*. In light of SSR 06-03p, the Court concludes that the ALJ's reasoning was

sound. P.A. Huerta's disputed opinion addressed an issue reserved for the

Commissioner—whether Plaintiff was disabled—rather than impairment severity

or functional effects. For this reason, the Court finds that the ALJ provided

sufficient reasoning for giving this particular opinion "little weight." *Id*.

Turning to Plaintiff's second argument, Plaintiff asserts that the ALJ

improperly rejected P.A. Huerta's opinions by "failing to offer specific, germane

reasons for the rejection." ECF No. 13 at 13. Plaintiff claims that the ALJ rejected

P.A. Huerta's opinions for the following reasons: (1) it was not supported by the

Plaintiff's presentation during examination; (2) it was not supported by Plaintiff's

daily activities; and (3) the October 2015 opinion was not well explained. *Id*. at

12. Plaintiff alleges that "the ALJ's rejection constitutes facially invalid

boilerplate language, as he identifies no specific findings contradicting Mr.

Huerta's opinion." *Id*.

First, the ALJ assigned little weight to P.A. Huerta's opinions that Plaintiff

was severely disabled and unable to work because "they are not supported by the

substantial findings and the record as a whole," which showed that Plaintiff was more functional than P.A. Huerta estimated. Tr. 30. Specifically, the ALJ noted that P.A. Huerta's opinion conflicted with Plaintiff's physical presentation during other examinations, including Dr. Opara's June 2014 physical evaluation, as well as Plaintiff's activities of daily living, which included taking care of her two dogs, cleaning, babysitting her grandchildren, doing yardwork, and grocery shopping. Tr. at 30; *see id*. at 434, 447, 468.

It is the ALJ's duty to resolve conflicting medical opinions. *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). Significantly, when evaluating conflicting medical opinions, an ALJ need not accept a medical opinion that is inadequately supported by the record as a whole or by objective medical findings. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings."). And, in resolving conflicting medical opinions, an ALJ may discount a doctor's opinion when it is inconsistent with a claimant's activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (ALJ may discount physician's opinion regarding severity of limitations when inconsistent with claimant's activities of daily living). Here, the ALJ limited the weight of P.A. Huerta's opinions regarding the severity of Plaintiff's impairments as they were

unsupported by objective medical findings and inconsistent with Plaintiff's daily

activities. The ALJ's resolution of the conflicting opinions is reasonable and must

be upheld. *See Batson*, 359 F.3d at 1193 ("[T]he Commissioner's finding are

upheld if supported by inferences reasonably drawn from the record . . . and if

evidence exists to support more than one rationale interpretation, we must defer to

the Commissioner's decision.").

Next, regarding P.A. Huerta's October 2015 evaluation, the ALJ credited

little weight to this opinion because P.A. Huerta did not adequately explain how he

reached his conclusion that Plaintiff's arthritis severely limited her ability to work.

*Id*. at 30. On October 28, 2015, P.A. Huerta examined Plaintiff for DSHS and

filled out a DSHS "Physical Functional Evaluation" form. *Id*. at 459-61. On the

form, P.A. Huerta listed Plaintiff's subjective complaints as arthritis, chronic pain,

and depression, and then described Plaintiff's limitations or workplace restrictions

as simply, "very impaired" and "off balance." *Id*. at 459-60. In the "Assessment"

portion of the form, P.A. Huerta wrote "Arthritis" as Plaintiff's primary

impairment, listed nine work activities affected by the diagnosis (walking, lifting,

carrying, handling, pushing, pulling, reaching, stooping, crouching), and assigned a

severity rating of "4-5," meaning Plaintiff experienced very significant interference

or the complete inability to perform the activities. *Id*. at 460. In the following

section on the form, which consists of a number of check boxes next to different

categories of work capability, P.A. Huerta checked the box next to "severely limited," defined as unable to meet the demands of sedentary work, *Id*. at 461.

The ALJ gave the October 2015 opinion "little weight" because P.A. Huerta provided little to no explanation as to how he reached his findings. Plaintiff argues that this is not a specific and legitimate reason to reject P.A. Huerta's opinion. ECF No. 13 at 12-13. However, as discussed, when evaluating conflicting medical opinions, an ALJ need not accept a medical opinion if that opinion is brief, conclusory, and inadequately supported by clinical findings. *See Bayliss*, 427 F.3d at 1216; *Batson*, 359 F.3d at 1195; *Morgan*, 169 F.3d at 601-02. Because P.A. Huerta's opinion was conclusory, brief, and unsupported by clinical evidence, the ALJ's resolution of the conflicting opinions is reasonable.

In reviewing the record as a whole, and weighing evidence in support of and against the ALJ's conclusion, the Court finds that the ALJ provided sufficient reasoning for limiting P.A. Huerta's opinions. *See Bayliss,* 427 F.3d at 1216; *Magallanes*, 881 F.2d at 750 (citation omitted) (stating that where there is "more than one rational interpretation," courts are required to uphold an ALJ's decision). Contrary to Plaintiff's contentions, the ALJ provided specific and legitimate reasons that are supported by substantial evidence to assign little weight to P.A. Huerta's December 2013, March 2015, and October 2015 opinions. Given that the ALJ is charged with resolving conflicts or ambiguities in medical testimony, and

based on the ALJ's legitimate clear and convincing reasons supported by substantial evidence, the Court finds that the ALJ did not err in giving "little weight" to P.A. Huerta's opinions.  Tr. 30.

### D. Adverse Credibility Determination

Plaintiff asserts that the ALJ erred by failing "to provide valid reasons for rejecting [Plaintiff's] subjective complaints."  ECF Nos. 13 at 16-19; 15 at 9-10. Specifically, Plaintiff faults the ALJ for: (1) failing to "provide clear and convincing reasons for rejecting [Plaintiff's] subjective complaints," and failing to "specifically identify what testimony was credible or why"; (2) "mischaracterizing and ignoring substantial evidence" that supported Plaintiff's testimony and contradicted the ALJ's findings; and (3) asserting "that the claimant's daily activities were inconsistent with her disability claim."  ECF No. 13 at 17-18.

In social security proceedings, a claimant must prove the existence of physical or mental impairment with "medical evidence consisting of signs, symptoms, and laboratory findings."  20 C.F.R. § 404.1508.  A claimant's statements about his or her symptoms alone will not suffice.  20 C.F.R. §§ 404.1508; 404.1527.  Once an impairment has been proven to exist, the claimant need not offer further medical evidence to substantiate the alleged severity of his or her symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).  As long as the impairment "could reasonably be expected to produce [the] symptoms," 20

C.F.R. § 404.1529(b), the claimant may offer a subjective evaluation as to the severity of the impairment. *Id.* This rule recognizes that the severity of a claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347 (quotation and citation omitted).

However, in the event an ALJ finds the claimant's subjective assessment unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958. In making such determination, the ALJ may consider, *inter alia*: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *See id.* If there is no evidence of malingering, the ALJ's reasons for discrediting the claimant's testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted). The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan*, 246 F.3d at 1208.

Here, the ALJ found that the medical evidence confirmed the existence of medical impairments which could reasonably be expected to cause some of Plaintiff's alleged symptoms. Tr. 25. However, the ALJ did not credit Plaintiff's testimony about the intensity, persistence, and limiting effects of the symptoms. *Id*. Rather, the ALJ concluded that Plaintiff's statements "are not entirely consistent with the medical evidence and other evidence in the record." *Id*. There is no evidence of malingering in this case, and therefore the Court must ultimately determine whether the ALJ provided specific, clear and convincing reasons not to credit Plaintiff's testimony of the limiting effect of her symptoms. *Chaudhry*, 688 F.3d at 672. The Court concludes that the ALJ did provide specific, clear and convincing reasons.

To support its adverse credibility determination, the ALJ consulted Plaintiff's medical records, summarized the relevant records, and cited to portions of the record which were inconsistent with the severity of symptoms and limitations Plaintiff alleged. First, regarding Plaintiff's physical complaints, the ALJ found that "[t]he medical record indicates that the claimant has limits but her impairments are not as severe as alleged and she is not as limited as alleged." Tr. 26. The ALJ noted that Plaintiff complained of "significant back pain, bilateral CTS pain, wrist pain, left knee pain and swelling, loss of balance, pain and locking of bilateral hands, elbows, arms, shoulders, toes, and left ankle." Tr. 25. However,

the ALJ observed the Plaintiff regularly exhibited "normal back with no costoverterbral angle (CVA) tenderness," "normal neck with full range of motion and no tenderness," "normal shoulders, elbows, wrists, thumbs, fingers, hips, and knees," and "normal/near normal range of motion of upper and lower extremities." Tr. 25-26. Further, despite Plaintiff's complaints of difficulty walking, the ALJ noted that Plaintiff retains a normal gait, normal coordination, normal station, and intact sensation with no neurological deficits, no foot drop, or straight leg raising. Tr. 26. The ALJ observed that Plaintiff's reports of pain in her legs was not corroborated by her negative straight leg raising tests and that Plaintiff did not complain of any wrist or hand pain in 2016. *Id*. The ALJ also referenced a May 2016 examination, where it was noted that Plaintiff was "doing well" on current medications, with decreased back and joint pain. *Id*. Based on the record, the ALJ concluded that "[Plaintiff's] allegations are out of proportion to the objective findings and her presentation during examination." Tr. 25.

While Plaintiff faults the ALJ for not finding that her symptoms were sufficiently severe to prevent gainful employment, the Court finds that Plaintiff has failed to demonstrate that the records relied on by the ALJ do not constitute sufficient evidence of Plaintiff's physical mobility, decreasing pain, and improvement with medication. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical

evidence, the medical evidence is still a relevant factor in determining the severity

of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d

853, 857 (9th Cir. 2001) (citation omitted).  Such inconsistencies between

Plaintiff's alleged limitations and medical evidence provide a permissible reason

for discounting Plaintiff's credibility.  *See Thomas*, 278 F.3d at 958-59 (explaining,

if the ALJ finds that a claimant's testimony as to the severity of her pain and

impairments is unreliable, the ALJ must make a credibility determination and, in

doing so, "[t]he ALJ may consider . . . testimony from physicians and third parties

concerning the nature, severity and effect of the symptoms of which the claimant

complains.") (internal citations and modifications omitted).

Next, the ALJ addressed the degree of limitation caused by Plaintiff's

mental impairments.  Tr. 26.  Regarding Plaintiff's learning disorder, the ALJ

observed that Dr. Marks recommended that Plaintiff seek out psychotherapy

treatment in December 2013, but Plaintiff had undergone minimal, if any, mental

health treatment.  *Id.*  In terms of cognition, the ALJ noted that Plaintiff typically

exhibits full orientation, normal thought content, including well-organized content

with no psychosis and/or suicidal/homicidal ideation.  Tr. 26-27.  Additionally, the

ALJ found it significant that treatment providers typically observed Plaintiff as

being in no acute distress during appointments and, in September 2016, it was

noted that Plaintiff had decreased depression, insomnia, mood swings, and anxiety.

Tr. 27; *see id.* at 520. The ALJ further observed that Plaintiff's own statements were inconsistent with her allegations of significant mental limitations. Tr. 27. As an example, the ALJ cited Dr. Opara's June 2014 examination where Plaintiff explained that she "does not think that she is all that depressed," and that "[s]he only feels bad when her pain is aggravated" and "does not have any homicidal or suicidal ideation." *Id.*; *see id.* at 433. Based on this evidence, the ALJ concluded that Plaintiff's "allegations of chronic, incapacitating learning disorder, depression, anxiety" was inconsistent with the medical record. Tr. 27. As discussed above, the inconsistencies between Plaintiff's alleged limitations and medical evidence provide a permissible reason for discounting Plaintiff's credibility. *Thomas*, 278 F.3d at 958-59.

Finally, the ALJ considered a variety of "other factors" relevant to Plaintiff's credibility, including Plaintiff's activities of daily living. Tr. at 27. The ALJ ultimately concluded that Plaintiff's "reported activities of daily living and social interaction . . . are inconsistent with her allegations of severely limiting symptoms." *Id.* Though Plaintiff alleged worsening physical pain and symptoms, the ALJ observed that Plaintiff takes care of her two dogs, which involves feeding them and cleaning their kennel area, and that Plaintiff also takes care of her personal needs, helps care for her grandchildren, prepares simple meals daily, cleans, does laundry, light housework, yardwork, goes grocery shopping, visits

people's houses, goes to family events, and attends appointments.[4]  *Id*.  As

reported during Dr. Mark's January 2015 evaluation, Plaintiff confirmed that she

"makes simple meals, and can take care of her own personal needs," and "enjoys

cooking and cleaning and can manage her own money well."  *Id*.; *see id*. at 447.

The ALJ also noted that, although Plaintiff stated that she does not drive, Plaintiff

testified at her appeal hearing that she can drive a car and she drove herself to court

that day.  Tr. 27-28; 120-21.  The ALJ found that "[t]hese activities demonstrate

that the claimant's impairments have not been as limiting as alleged."  Tr. 28.

---

[4]      The ALJ also asserted that, "[a]t a January 2015 evaluation, the claimant

said she can take care of most of her activities of daily living and that she is

functioning as an 'informal caregiver' to a friend."  Tr. 27.  The ALJ misrepresents

the record.   The "January 2015 evaluation" refers to Dr. Mark's second

psychological evaluation of Plaintiff.  Tr. 445.  In his evaluation notes, Dr. Mark

summarized the records he reviewed, which included a January 2012 psychological

evaluation conducted by Dr. Justin Jarret.  Summarizing the January 2012

evaluation, Dr. Mark noted that Plaintiff "was currently functioning as an informal

caregiver to one of her friends" and she "reported that she can take care of her

activities of daily living."  Tr. 446.  Plaintiff did not make these statements during

the January 2015 evaluation, as the ALJ intimates.

Evidence about daily activities is properly considered in making a credibility determination. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In evaluating credibility, an ALJ may properly consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina*, 674 F.3d at 1113 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id*. The ALJ did not err in concluded that certain activities Plaintiff engages in, such as cooking, cleaning, and driving, demonstrate greater exertional abilities than the severe limitations claimed by Plaintiff.

The Court notes that, after analyzing Plaintiff's daily activities, the ALJ identified and discussed several "other factors" that he deemed relevant to Plaintiff's credibility. Tr. 27-28. These "other factors" included: (1) Plaintiff's poor work history, "relied upon to show a lack of motivation"; (2) Plaintiff's continued drug use, indicating her unwillingness to comply with treatment recommendations, which suggests "that her symptoms may not have been as serious as alleged"; and (3) Plaintiff's criminal history. Regarding the latter, the ALJ opined that "claimant's criminal history, rather than [her] alleged impairments, appears to be another reason for her current lack of employment," observing that "claimant has a history of dishonesty [that] erodes [her] credibility"

and "[a] felony conviction will also limit the number of employers who are willing to employer her." *Id*. at 28.  As the ALJ noted, the Ninth Circuit has recognized that ordinary techniques of credibility evaluation may be applied in Social Security disability hearings, and that the Federal Rules of Evidence do not preclude admission of state convictions in Social Security administrative hearings.  Tr. 28, n.1; *see Smolen*, 80 F.3d at 1283; *Bayliss*, 427 F.3d at 1218 n.4; *Hardisty v. Astrue*, 592 F.3d 1072, 1080 (9th Cir. 2010).

While it may not technically be "inappropriate" to take these factors into account when evaluating the persuasiveness of a claimant's allegations, this Court is not convinced of the evidence's usefulness in proving, or disproving, a claimant's credibility.  Tr. 28 n.1.  The Ninth Circuit may permit consideration of a claimant's criminal record or drug use in assessing credibility.  However, the question remains as to whether these factors should serve as clear and convincing reasons to discredit a claimant.  *Id*. at 28 n.1.  In this case, this Court finds that the evidence of Plaintiff's work history, drug use, and criminal history, does not add significant probative weight to the ALJ's credibility determination.

In sum, the ALJ recognized Plaintiff's impairments in assigning a light work RFC, but did not credit Plaintiff's subjective claims to the full extent that Plaintiff claimed she was severely limited in her functionality.  Tr. 25.  The ALJ's decision provides specific, clear and convincing reasons supported by substantial evidence

sufficient for this Court to conclude that the adverse credibility determination was not arbitrary.

### E. Lay Witness Testimony

Plaintiff contends that the ALJ "improperly rejected lay witness testimony" from Plaintiff's friend, Michelle Willis, and Plaintiff's two daughters, Lhuzia Trerino and Briana Trerino, without providing specific reasons "germane to each witness" for rejecting the lay testimony. ECF No. 13 at 14-15 (quoting *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006). Defendant responds that the ALJ gave well-supported reasons for rejecting Plaintiff's testimony regarding her symptoms that were equally relevant to the similar testimony of the law witnesses, which supported the ALJ's finding that the lay testimony was not similarly credible. ECF No. 14 at 12-13.

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114. Further, competent lay witness testimony "'cannot be disregarded without comment.'" *Id.* (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Instead, in order to discount competent lay witness testimony, the ALJ "'must give reasons that are germane to each witness.'" *Id.* (quoting *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). However, the ALJ is not necessarily "required to discuss every witness's testimony on an

individualized, witness-by-witness basis." *Id*. Instead, where the ALJ provides

clear and convincing reasons for rejecting the claimant's own subjective

complaints, and those reasons are equally relevant to the similar testimony of the

lay witnesses, the ALJ may use those same reasons to disregard the lay witness

testimony in the aggregate. *Id*. at 1115.

The Court finds that the ALJ adequately explained his reasons for

disregarding the lay witness testimony. The ALJ gave two reasons for assigning

"little weight" to the lay witness statements. Tr. 31. First, the ALJ identified that

the lay witness statements were "similar to the claimant's own subjective

complaints of disabling physical/mental impairments." *Id*. Second, the ALJ

explained

> I assign the statements "little weight for the same reasons I
> determined that the claimant's statements regarding the severity of her
> symptoms are not consistent with the evidence (i.e., her longitudinal
> treatment history, the objective findings, her performance on physical
> and mental status examinations, and her independent daily activities).

*Id*.

Thus, rather than disregarding the lay witness testimony without comment,

as Plaintiff contends, the ALJ gave germane reasons for rejecting the lay witness

testimony. The ALJ provided clear and convincing reasons for rejecting Plaintiff's

testimony regarding her symptoms, which were equally relevant to the similar

testimony of the lay witnesses, and the ALJ pointed to those reasons when

rejecting the law witnesses' testimony. *See Molina*, 674 F.3d at 1114 (explaining,

"if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ

need only point to those reasons when rejecting similar testimony by a different

witness."). Therefore, the Court concludes that the ALJ did not err in assessing the

lay witness testimony.

### F. Step-Five Analysis

Plaintiff contends that the ALJ erred by providing an incomplete

hypothetical to the vocational expert at Plaintiff's hearing. ECF No. 13 at 19-20.

The ALJ provided the following hypothetical to the vocational expert:

> A younger individual, eight years of formal schooling, no past
> relevant work. Physically assume this younger individual can
> occasionally life and/or carry 20 pounds, frequently lift and/or carry
> ten pounds, stand and/or walk with usual breaks for hours or sit with
> normal breaks for up to six hours out of a workday, push and/or pull
> including the operation of hand and foot controls unlimited other than
> as shown from lifting and carrying. Postural limitations include
> occasional climbing ramps or stairs, never climbing ladders, ropes, or
> scaffolding, occasional balance, occasional stoop, occasional kneel,
> occasional crouch, and occasional crawl. Manipulative limitations
> include unlimited reaching any direction including overhead.
> Handling and gross manipulation is limited bilaterally to frequent.
> Fingering and fine manipulation is unlimited. Feeling is unlimited.
> Visual, there are no visual limitations. There are no communication
> limitations. Environmental limitations would be to avoid
> concentrated exposure to working around hazardous machinery or
> unprotected heights. Further assume this younger individual has the
> capability to understand, remember, and carryout simple instructions,
> can make judgments commensurate with the functions of unskilled
> work, that is work which needs little or no judgment to do simple
> duties, and the person can usually learn to do the job in 30 days, and

little specific vocational preparation and judgment are needed. Further assume the individual can respond appropriately to supervision, coworkers, and deal with occasional changes in work environment, but would have some difficulty working with the general public, but can work in jobs requiring only occasional interaction with the general public.

Tr. 143-44. The expert relied on this hypothetical to determine that Plaintiff was capable of working as a production assembler, inspector and hand packager, or a nut and bolt assembler. Tr. 145-46.

Plaintiff contends that the ALJ erroneously excluded the following limitations from the hypothetical, which she argues are supported by substantial evidence in the record: (1) Plaintiff is restricted to occasional handling; (2) Plaintiff's need to elevate her legs for 15 minutes every hour; (3) Plaintiff is off task 10-20% of the workday or workweek; (4) Plaintiff's need for reminders from supervisors past the probationary period; and (5) Plaintiff's need to be absent one day per month on a continuing basis. ECF No. 13 at 20. In Plaintiff's view, when this evidence is properly considered at step-five, "it becomes clear that [Plaintiff] is unable to maintain competitive employment." *Id*.

An ALJ need not include limitations in the hypothetical that the ALJ has concluded are not supported by substantial evidence in the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001). As discussed, the ALJ did not err in excluding these alleged limitations in formulating Plaintiff's RFC. As such,

the ALJ did not err in excluding them from the hypothetical.  The ALJ considered the medical evidence and Plaintiff's testimony regarding the asserted limitations. The ALJ ultimately concluded that the evidence only established that Plaintiff had some, but not all, of the alleged limitations.  Tr. 25.  These were the limitations the ALJ found supported by substantial evidence in the record.  The ALJ concluded further limitations were not supported by the record and, as articulated above, this conclusion was not erroneous.  The hypothetical the ALJ used was "accurate, detailed, and supported by the medical record," and the ALJ was then permitted to rely on the vocational expert's testimony.  *See Tackett*, 180 F.3d at 1101.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

    1.  Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**.

    2.  Defendant's Motion for Summary Judgment (ECF No. 14) is

       **GRANTED**.

The District Court Executive is hereby directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** this file

    **DATED** December 4, 2018.



                THOMAS O. RICE
           Chief United States District Judge